IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-1-FL

| | |
|---|---|
| DAVID D. MOIR, Co-executor of the Estate of Tia D. Andrew, and RONALD B. MOIR, JR., Co-executor of the Estate of Tia D. Andrew,<br><br>        Plaintiffs,<br><br>  v.<br><br>MARSHA L. ANDREW,<br><br>        Defendant. | ORDER |

This matter is before the court on defendant's motion to dismiss for lack of personal jurisdiction (DE 11) and plaintiffs' motion to remand (DE 15). The motions have been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, plaintiffs' motion is granted, and defendant's motion is denied without prejudice.

**STATEMENT OF THE CASE**

Plaintiffs commenced this action in Wake County Superior Court on November 5, 2019, asserting state law claims against defendant, who is alleged to be a former caretaker of plaintiffs' mother, Tia D. Andrew ("Tia"), who died in Bermuda on October 18, 2018. Plaintiffs claim that defendant breached fiduciary duties, committed constructive fraud, converted Tia's funds, and tortuously interfered with their administration of Tia's estate. Plaintiffs seek monetary damages, order of constructive trust over defendant's property located in Wake Forest, North Carolina, and an order directing return of assets.

Defendant filed a notice of removal in this court on January 2, 2020, asserting diversity jurisdiction on the basis that this is "an action between citizens of different states . . . and [d]efendant is not a citizen or resident of North Carolina," (DE 1 ¶ 4), relying upon her affidavit attached to the notice of removal. Defendant filed the instant motion to dismiss on February 7, 2020, on the basis that this court lacks personal jurisdiction over her, again relying upon her affidavit.

Plaintiffs filed the instant motion to remand for lack of subject matter jurisdiction on February 28, 2020, relying upon a declaration of plaintiff David D. Moir ("David Moir"), correspondence between counsel, and a sealed exhibit containing bank account records. That same date, plaintiffs filed a response in opposition to defendant's motion to dismiss, relying upon a declaration of Linda T. Jones ("Jones"), a paralegal for counsel for plaintiffs.

Defendant replied in support of her motion to dismiss on March 16, 2020, relying upon her own declaration, with sealed correspondence from Tia's attorney, dated May 8, 2015. Defendant responded in opposition to plaintiffs' motion to remand on March 20, 2020, relying upon a first recorded mortgage on property from the Wake County Register of Deeds. With leave of court, plaintiffs filed a surreply in opposition to defendant's motion to dismiss on March 26, 2020. Plaintiffs filed a reply in support of remand on April 3, 2020, relying upon a declaration of counsel and correspondence between counsel.

## STATEMENT OF THE FACTS

The facts alleged in the complaint may be summarized as follows. The estate of Tia was accepted for probate on January 8, 2019, in Massachusetts, and plaintiffs are citizens of Massachusetts. According to the complaint, defendant is a citizen and resident of Wake County, North Carolina.

Tia was born in Chicago on November 19, 1928, and died in Bermuda on October 18, 2018, at the age of 89 years. Plaintiffs are the sons of Tia and Ronald Brown Moir Sr., to whom Tia was married from 1951 until Ronald Brown Moir Sr.'s death in 1982. Tia married her second husband, David Edward Waldron Andrew ("Mr. Andrew") in 2000 and remained married until Mr. Andrew's death in 2012.

Mr. Andrew's son, Mark Waldron Andrew ("Mark") is married to defendant. After Mr. Andrew's death, defendant began to provide Tia with elder care services and household management and maintenance services from late 2012 (when Tia was 84 years old) until Tia's death in 2018. Defendant and her family were compensated directly for these services in the amount of approximately $300,000.00 over the span of five years. According to plaintiffs, defendant was not employed during this time period, and she resided at her home in Wake Forest, North Carolina or at Tia's home in Bermuda. In April, 2014, defendant was given signing powers on Tia's bank account to aid Tia in managing her account and attending to her financial affairs.

According to the complaint, after being added on the account to assist Tia in 2014, defendant immediately began withdrawing money from Tia's account for her and her family's own use. Defendant allegedly made cash withdrawals off Tia's account, transferred money from Tia's account to her own account, paid down her credit cards from Tia's account, paid down the mortgage on her Wake County home from Tia's account, and paid her family's bills from Tia's account. This behavior by defendant allegedly continued from 2014 through the time of Tia's death in 2018.

In addition to using Tia's bank account, defendant allegedly began to withhold and isolate Tia from Tia's family. Defendant allegedly prohibited plaintiffs from staying at Tia's Bermuda home and would require them to stay in local hotels when they visited their mother. According to

3

the complaint, defendant did not disclose to Tia or plaintiffs that she was using Tia's bank account for her and her family's own personal use.

Defendant and her husband, Mark, allegedly unduly influenced Tia to deed her property in Bermuda to Mark for the sum of one Bermudan dollar ($1.00). According to the complaint, Tia's property in Bermuda was valued at $1,725,000.00. Tia's estate has filed a lawsuit against Mark and defendant in Bermuda for the recovery of Tia's Bermuda home. During the period that Marsha was Tia's primary caregiver, Tia allegedly was physically frail. According to the complaint, Tia's mental and cognitive health began to deteriorate in 2012 and she began to experience increased memory loss. Tia allegedly was in great distress after her second husband's death and relied heavily on defendant and defendant's family. According to the complaint, defendant and her family used this reliance to perpetrate alleged wrongs and allegedly take advantage of Tia.

**COURT'S DISCUSSION**

A.  Standard of Review

In any case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The burden of establishing federal jurisdiction is placed upon the party seeking removal." Mulcahey v. Columbia Organic Chemicals Co., 29 F.3d 148, 151 (4th Cir. 1994). "Because removal jurisdiction raises significant federalism concerns, [the court] must strictly construe removal jurisdiction." Id. "If federal jurisdiction is doubtful, a remand is necessary." Id.; see Common Cause v. Lewis, ___ F.3d ___, 2020 WL 1879579, at *3 (4th Cir. 2020) (recognizing the court's "duty to construe removal jurisdiction strictly and resolve doubts in favor of remand") (quoting Palisades Collections LLC v. Shorts, 552 F.3d 327, 336 (4th Cir. 2008)).

B. Analysis

1. Remand

Plaintiffs argue that remand is required because diversity jurisdiction asserted upon removal is lacking.

This court has diversity jurisdiction over civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1). For purposes of this provision, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2).

"In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States and be domiciled within the State." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828 (1989). Accordingly, a United States citizen domiciled in another country has a "'stateless' status," which precludes exercise of diversity jurisdiction. Id. at 828-829; see Wright & Miller, 13E Fed. Prac. & Proc. Juris. § 3621 (3d ed.) ("[I]t has been held consistently, in a significant number of cases, that a diversity suit may not be maintained under Section 1332(a)(1) by or against a United States citizen who is domiciled in a foreign country and therefore has no state citizenship in this country.").

Here, defendant avers in her affidavit in support of removal that she is "a citizen and resident of Bermuda," where she has been a "permanent resident . . . for 7 years." (Def. Aff. (DE 1-2) ¶ 3). She avers she is "not a citizen or resident of North Carolina," although she "was formerly a resident of North Carolina." (Id.). She also avers that Tia "moved to Bermuda after her husband's death and lived there for many decades" until "she died in Bermuda in 2018." (Id. ¶ 5).

5

Based upon defendant's own averments, diversity jurisdiction is lacking, because neither plaintiffs nor defendant are domiciled in any state for purposes of the diversity statute. According to defendant's affidavit, she is domiciled in Bermuda, thus destroying diversity jurisdiction. Plaintiffs also are domiciled in Bermuda, by virtue of their status as legal representative of the estate of Tia, who lived there for decades and died there. Thus, based upon defendant's averments, the parties in this case all have a "'stateless' status" that precludes exercise of diversity jurisdiction. Newman-Green, 490 U.S. at 828-829. Moreover, even though plaintiffs challenge defendant's assertion that she is not domiciled in North Carolina, it is undisputed that plaintiffs, as representatives of Tia's estate, are domiciled abroad, thus independently precluding diversity jurisdiction.

In opposing remand, defendant does not dispute that diversity jurisdiction is lacking. (See Def's Opp. (DE 3-5). Rather, defendant argues that the court should decide the personal jurisdiction and forum non conveniens issues raised by her motion, and dismiss the action with prejudice, without reaching the question of remand. This argument is unavailing.

"If personal jurisdiction raises difficult questions of state law, and subject-matter jurisdiction is resolved as easily as personal jurisdiction, a district court will ordinarily conclude that federalism concerns tip the scales in favor of initially ruling on the motion to remand." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 586 (1999) (quotations omitted). "In other cases, however, the district court may find that concerns of judicial economy and restraint are overriding." Id. "[I]f removal is nonfrivolous and personal jurisdiction turns on federal constitutional issues, federal intrusion into state courts' authority is minimized." Id. at 587.

"The well-advised defendant will foresee the likely outcome of an unwarranted removal— a swift and nonreviewable remand order, attended by the displeasure of a district court whose

authority has been improperly invoked." Id. at 587. "[I]n most instances subject-matter jurisdiction will involve no arduous inquiry, and engaging subject-matter jurisdiction at the outset of a case is often the most efficient way of going." Id. (quotations omitted). "In such cases, both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first." Id. "[A] court disposing of a case on personal jurisdiction grounds should be convinced that the challenge to the court's subject-matter jurisdiction is not easily resolved." Id. (quotations omitted).

In this case, the question of subject-matter jurisdiction is easily resolved. Indeed, there is no dispute about the facts or the law demonstrating a lack of subject matter jurisdiction. By contrast, there is a substantial dispute about the facts and law that bears upon personal jurisdiction and forum non conveniens. (See, e.g., Pls' Opp. (DE 20) at 7-17; Pls' Surreply (DE 31) at 7-11). Therefore, considerations of expedition and sensitivity to the state courts' coequal stature compel the court to dispose of the question of subject-matter jurisdiction first. Where there is no dispute that diversity jurisdiction is lacking, the case must be remanded to state court.

Accordingly, plaintiffs' motion to remand is granted, and defendant's motion to dismiss for lack of personal jurisdiction is denied without prejudice.

2. Attorney's fees

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

> Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case. For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees. When a

court exercises its discretion in this manner, however, its reasons for departing from
the general rule should be faithful to the purposes of awarding fees under § 1447(c).

Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

In addressing a request for attorney's fees in the context of remand, this court has looked to whether removing defendants "provided detailed arguments and 'comprehensively briefed the issues arising from their removal, including with reference to a wide range of case law.'" Common Cause, ___ F.3d at ___, 2020 WL 1879579, at *8 (quoting Common Cause v. Lewis, 358 F. Supp. 3d 505, 515 (E.D.N.C. 2019)). The United States Court of Appeals for the Fourth Circuit also has looked to whether "[w]ithin our Circuit, indeed within North Carolina, there is precedent for a defendant to remove . . . litigation to federal court under the" basis advanced in the notice of removal. Id.

In this case, defendant lacked an objectively reasonable basis for seeking removal. Indeed, as noted above, defendant herself offers no case law or authority authorizing exercise of diversity jurisdiction under the facts of this case. Defendant identifies only "case law holding that United States citizens domiciled abroad do not fit any of the categories required for a federal court's exercise of diversity jurisdiction." (Def's Mem. (DE 12) at 3). Defendant also recognizes the "need for a motion for remand," and defendant had requested plaintiffs' "consent to a motion to remand." (Def's Opp. (DE 27) at 4). In sum, where there was no precedent supporting removal, an award of costs and actual expenses, including attorney's fees, is justified.

Defendant suggests, nonetheless, that an award of attorney's fees is not proper given "complex jurisdictional issues" presented by application of the diversity jurisdiction statute in this case. (Def's Mem. (DE 27) at 3). Defendant suggests that "what is described as 'settled law' that a United States citizen domiciled abroad cannot be considered for diversity purposes, may be accepted and applied by the courts, but it is not self-evident." (Id. at 5). However, the test for

8

attorney's fees is not whether lack of jurisdiction is "self-evident," but rather whether removal has "an objectively reasonable basis." Martin, 546 U.S. at 141. And, a removal that is not supported by any statutory text, case law, or precedent, lacks an objectively reasonable basis, particularly where no statutory text, case law, or precedent, is even asserted in opposition to remand on the diversity jurisdiction issue.

Defendant cites to journal articles for the proposition that "the wisdom and correctness of the[] 'accepted principles'" underlying federal diversity jurisdiction "have been criticized by legal scholars." (Id. at 6 (citing Linn, Diversity Jurisdiction and Permanent Resident Aliens, 38 Fed. B. News & J. 284, 287 (1991); Oakley, Recent Statutory Changes in the Law of Federal Jurisdiction And Venue: The Judicial Improvements Acts of 1988 and 1990, 24 U.C.Davis L. Rev. 735, 741-742 (1991)). But, such journal articles do not themselves provide precedent that is binding on the court, or even precedent with persuasive value. In any event, defendant did not cite these journal articles as a basis for diversity jurisdiction in this case, and they do not appear relevant to the two separate and independent grounds requiring remand in this case, being the asserted "stateless" status of both plaintiffs and defendant for purposes of the federal diversity statute. Newman-Green, 490 U.S. at 828-829.

Defendant also cites to In re Lowe, 102 F.3d 731, 733 (4th Cir. 1996), in which the court made comparisons to a prior district court case awarding attorney's fees, where a "'cursory examination would have revealed' a lack of federal jurisdiction." Id. at 733 n.2 (quoting Husk v. E.I. Du Pont De Nemours & Co., 842 F.Supp. 895, 899 (S.D.W.Va.1994)). By contrast, the Fourth Circuit noted, "[a]s evidenced by the significant proceedings in this court and the court below, the issues in this case are not similarly obvious." Id. Lowe, however, is inapposite to the instant circumstances, where, for example, it gauged the obviousness of the issues in the case by looking

to evidence of "the significant proceedings in this court and the court below" concerning jurisdiction. Id. In particular, in Lowe, the district court initially remanded the case to state court on the basis that residency of one named-defendant in North Carolina defeated diversity jurisdiction. Id. at 732-733. However, another judge of the same court later granted a motion for reconsideration by the defendants, on the basis that joinder of the North Carolina defendant was fraudulent. Id. at 733. The plaintiff then filed a second motion to remand, which the court denied, and the court also denied a motion for interlocutory appeal. Id. There are no comparable "significant proceedings" in the instant case on the merits of diversity jurisdiction. Id. at 733 n.2. Accordingly, Lowe is inapposite.

Finally, defendant suggests that she made good faith efforts to get plaintiffs' consent to remand the case, but, lacking a response from plaintiffs, she was compelled to press forward with a responsive pleading in the form of her motion to dismiss for lack of personal jurisdiction. While the court will take these and other relevant mitigating circumstances into consideration in determining the amount of reasonable attorney's fees, these circumstances do not bear upon whether removal was objectively reasonable. At this juncture, it suffices for present ruling that remand is required and that an award of costs and expenses, including attorney's fees, is justified.

The court will retain jurisdiction solely to determine amount of reasonable costs and expenses, including attorney's fees. On that issue, the court directs plaintiffs to file a notice within **14 days** detailing their costs and expenses, including attorney's fees, incurred as a result of the removal. Plaintiffs may include discussion, also, supporting the reasonableness of the amount of costs and expenses sought. Defendant may file a response within **14 days** of plaintiffs' notice, which also may include discussion regarding the reasonableness of the amount of costs and

expenses sought.  Thereupon, the court will enter such further order as is warranted regarding costs and expenses, including attorney's fees.

## CONCLUSION

Based on the foregoing, plaintiffs' motion to remand (DE 15) is GRANTED, and defendant's motion to dismiss for lack of personal jurisdiction (DE 11) is DENIED WITHOUT PREJUDICE.  This case is REMANDED to the General Court of Justice, Superior Court Division, Wake County, North Carolina, for further proceedings. The clerk is DIRECTED to transmit a certified copy of this order to the clerk of the General Court of Justice, Superior Court Division, Wake County, North Carolina, and to file in this case a copy of the clerk's transmittal letter with certified copy of the instant order. The court will retain jurisdiction in this case only for purposes of determining the amount of reasonable costs and expenses, including attorney's fees, to be awarded to plaintiffs pursuant to 28 U.S.C. § 1447(c).  Plaintiffs are DIRECTED to file within **14 days** of the date of this order, a notice regarding costs and expenses, including attorney's fees, as set forth in more detail herein.  Defendant may file a response within **14 days** of plaintiffs' notice, as set forth in more detail herein.

SO ORDERED, this the 29th day of April, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge